BRIDWELL *et al.*, *Appellants*, v. SWANK *et al.*

1. **Guardian and Ward:** DEVISE TO GUARDIAN BY WARD: UNDUE INFLUENCE: PRESUMPTION. A devise by a ward to or for the benefit of his guardian, in any proceeding to establish or contest the same, is presumed in law to have been procured by undue influence of the guardian, and the burden of repelling this presumption, and thereby maintaining the devise, rests upon those seeking to derive advantage from it.

2. ——: ——: ——: ——. If the fiduciary relation of guardian and ward existed at the time of the execution of the gift or devise, and the parties were so situated with reference to each other that undue influence could have been used, the law presumes that it was used, and those seeking to derive advantage from the gift or devise, must rebut the presumption by competent and convincing proof.

3. **Bequest by Ward to Wife of Guardian.** A bequest to the wife of the guardian is within the operation of the rule imposing upon him and his wife the burden of repelling the presumption of undue influence, where it appears that the guardian may expect and derive substantial advantage and benefit from such will of his ward.

4. **Semble,** that the next best thing, after a bequest to one's self, is a

84  455
120  297

84  455
153  316
154  580

bequest to his wife, and that in many instances the latter may be regarded as the safer and preferable one.

5. **Question for Jury.** It is for the jury, under proper instructions, to decide whether the evidence is sufficient to repel the disputed claim of undue influence.

6. **Practice in Supreme Court:** INSTRUCTIONS. An instruction, although open to objection, will not cause a reversal of the cause where it appears that no material error resulted from its having been given.

7. ————: EVIDENCE. Nor will improper evidence cause a reversal where the party against whose objection it was admitted, was not prejudiced by such admission.

*Appeal from Mississippi Circuit Court.*—HON. J. D. FOSTER, Judge.

AFFIRMED.

*H. C. O'Bryan* for appellants.

Kate Lee having executed the alleged will, and died in 1878, and the descent being cast under Wagner's Statutes (Edition of 1870), that statute must govern in the determination of the issues in this cause. In the determination of this cause, the jury manifestly disregarded the testimony and instructions of the court. Such being the case, the Supreme Court will interfere and reverse the judgment. *Ackley v. Staehlin,* 56 Mo. 558; *State ex rel. Nicholson v. Rombauer,* 44 Mo. 595; *State v. Burnside,* 37 Mo. 343. It is charged in appellant's petition, confessed in respondent's answer and proven on the trial, that at the time of the execution of the alleged will and death of Kate Lee, that she was unmarried and under twenty-one years of age, viz., nineteen years of age; therefore, said alleged will was void, in so far as the lands are concerned, on account of non-age. Secs. 1, 2, p. 1364, 1 Wag. Stat., Edition of 1870. *Caho v. Endress,* 68 Mo. 223, 227. The verdict and judgment in this cause being based on the issues properly made by

pleading, whether or not the paper writing was the will of Kate Lee, the judgment operates on the title of the lands, notwithstanding the instruction given · by the court, on its own motion, that the lands were not involved in the controversy, and the verdict and judgment is, therefore, radically wrong. It is confessed in re-spondent's pleadings, that Wm. P. Swank was the guardian, and that Margaret H. Swank, his wife, who is devisee, in the alleged will, was standing in relation of *quasi* guardian to said Kate Lee ; that she lived in the family ; that the relation had not been severed ; no final settlement made ; that the alleged will was exe-cuted during last sickness, etc.   It is recited in the alleged will by Kate Lee that she gave the residue and remainder of her property, both real and personal, in Missouri and Kentucky, to Margaret H. Swank, as a slight testimonial for her kindness and · untiring care and attention to her during her sickness for the last six months.   It is also proven by testimony of Bethune and Simpson, that Kate was displeased with the infant appellants.   All of these facts are conclusively proven or confessed.   Such being the case, the alleged will, as a matter of law, is void.   Secs. 317, 318, 319, 320, pp. 312 and 313, 1 Story's Equity Jurisprudence (12 Ed.) ;   *Garvin's Adm'r v. Williams*, 44 Mo. 465 ;   *Garvin's Adm'r v. Williams*, 50 Mo. 206.   The alleged will only created a general estate in Mrs. Swank to the lands, therefore Wm. P. Swank, the guardian of Kate Lee and husband of the devisee, had the right of use and possession. *Bartlett v. Donohoe*, 72 Mo. 563 ;   *Wilson v. Garaghty*, 70 Mo. 517 ;   *Hunt v. Thompson*, 61 Mo. 148 ;   *Cooper v. Ord*, 60 Mo. 420 ;   *Boal v. Wagner*, 46 Mo. 48.   The alleged will is therefore void.   Sections 317, 318, 319 and 320, pages 312 and 313, 1 Story's Eq. Jur. ( 12 Ed.); *Garvin v. Williams*, 44 Mo. 465.   The evidence as to the treatment of testatrix by appellants, was hearsay and irrevelant; so also the statements of witnesses with ref-

erence to the education and intelligence of the testatrix were irrelevant, misleading, and improper. As the contest brought the cause from the probate to the circuit court, it was in effect an appeal. *Lamb v. Helm*, 56 Mo. 432; *Benoist v. Murrin*, 48 Mo. 48. The action of the court in overruling appellants' objection and admitting as testimony the affidavit made by Bethune and Simpson before the probate court, and the order of the probate court probating said alleged will was illegal, and calculated to mislead the jury. The second instruction given for defendant was improper. 1 Story's Eq. Jur., secs. 319, 320; *Garvin v. Williams*, 50 Mo. 206, and 44 Mo. 465.

*Smith & Krauthoff* and *R. A. Hatcher* for respondents.

(1) The legal presumption of constructive fraud, which is claimed arose in this case because of the fiduciary relation between the testatrix and W. P. Swank, is completely overturned and rebutted in the testimony. Besides it must be borne in mind that Swank was not a guardian but only a curator of the estate of the deceased, and whether the one or the other he was not named as beneficiary in the will. The beneficiary, while the wife of the guardian curator, was the aunt of the testatrix, who no doubt was bound to her by the strongest ties of affection. The case, in its facts, is to be distinguished from the *Garvin case*, cited by appellants. (2) The second instruction given for plaintiffs by the trial court, plainly told the jury that if the relation of guardian and ward existed between Swank and Kate Lee at the time she executed the will making her aunt the chief beneficiary therein, that the law presumed that said will was procured by undue influence. This instruction goes even further than this court went in the Garvin will cases already cited. This instruction, to say the least, embodied the *ultima thule* of the doctrine of legal pre-

sumption arising in a case of this kind, and of which
plaintiffs certainly ought not now to complain. The first
instruction given by the court below for the defendant
contained the appropriate qualification of the distinctive
principle asserted in the second instruction given for the
plaintiffs ; and the two instructions, taken as an entirety,
fairly and fully presented the law of the case to the jury.
These two instructions, when considered together, are in
harmony with the authorities on the subject of legal pre-
sumptions arising in cases of this sort.    (3)   The second
instruction given for the defendant, and to which plain-
tiff makes objection, finds authoritative sanction in the
opinion of Judge Napton in the case of *Brinkman v.
Rueggesick*, 71 Mo. 553.   The doctrine of the instruction
is transcribed *verbatim et literatim* from the opinion of
this court in the case of *Turner v. Turner*, 44 Mo. 535 ;
*Conger v. Douglass*, 4 Edw. Ch. 433, 525, 532.    (4)   By
further reference to the fourth instruction asked by
plaintiffs and the third instruction asked by defendant,
both of which were given by the court, it will appear
that the issue submitted to the jury for its consideration
was, whether the portion of said will, which contained a
bequest of personal property to Margaret Swank, was
the will of the testatrix.   Both parties, by their instruc-
tions, asked the court to restrict the inquiry of the jury
into the testamentary capacity of the testatrix with
respect to her personal property at the time of the
making of her will.   It seems to have been conceded all
around that the statutory interdict upon the right of the
testatrix to dispose of her real estate by will was in
force, and operative on her at the time of the making of
her will, and the plaintiff had the undisputed possession of
the realty.   The plaintiffs, as it appears from their brief,
are seeking here to ignore the theory upon which they
proceeded in the trial of the case in the court below, and
to insist upon a reversal upon a point that was ruled in
their favor.   It seems that they are endeavoring to inter-

polate into the case in this court an issue which has already been decided for them. No claim is made to the realty under this will, and it being good as to part of the property, it was entitled to probate. And even if it is thought that the judgment of the circuit court is too broad, and that it ought only to establish the will as to the personalty, it can be modified to that extent by this court. R. S. § 3776. *Philips v. Stewart*, 69 Mo. 149; *Morgan v. C. & A. R. R.*, 76 Mo. 161, 178. (5) The *onus probandi* was on defendants in the case, and the trial court, so far as we can discover, did not unsoundly exercise its discretion in allowing defendants to introduce their testimony. *Benoist v. Murrin*, 58 Mo. 307; *Tingly v. Cowgill*, 48 Mo. 290; *Harris v. Hays*, 53 Mo. 90.

MARTIN, C.—This is a proceeding under the statutes to contest the validity of a will which had been formally proved in the probate court. The testatrix was a young lady by the name of Kate Lamar Lee, who died of consumption at the age of nineteen at the residence of her guardian, William P. Swank, who was also the husband of her aunt, the principal beneficiary in the will. The contestants are her half-sisters, minor children of the same mother, who had married again after the death of the father of the testatrix. It is alleged in the petition that the testatrix at the time of her decease in December, 1878, was seized of a valuable body of land in Mississippi county, and was possessed of about $1,000 in money; that at the time of the execution of the will, in November, 1878, as well as at the time of her decease in the following December, she resided with her guardian and aunt; that said William P. Swank, as guardian of her person and estate, had not made a final settlement of his trust; that under the circumstances said William a dn Margaret Swank had obtained and exercised an undue influence over the mind of said Kate Lee, and that the paper purporting to be her last will, was not executed by

her volition or in exercise of a rational judgment, but from the undue influence of said parties defendant, and further by an impulse of her mind, misled by the undue kindness of the said parties in her last illness; that said defendants, frequently in the last illness of said Kate, importuned her to make a will, and by reason of these importunities and undue influence, prevailed upon her to execute said paper writing and declare it to be her will.

The defendants plead to the allegations of the petition specifically, admitting the date of death, and the *seisin* of lands and possession of personal property, but denying the value and amount as alleged. It is further admitted that the testatrix was nineteen years of age and unmarried; that William P. Swank was her guardian, and had never made a final settlement of his guardianship. All undue influence charged in the petition is positively denied, as, also, that the will was executed by an impulse of the testatrix's mind, misled by the undue kindness of defendants. The defendants, also, deny having importuned or influenced the testatrix in any manner respecting her will, and allege that the same was her free act without any undue influence from them. The allegation of residence with her guardian not being denied may be taken as a fact admitted by the pleadings.

In the trial of the issue thus raised, the burden of proof rests upon the defendants as proponents of the will. To sustain the defence, which was affirmative in its nature, they produced the subscribing witnesses who testified to the formal execution and publication of the instrument. They next read in evidence the will, and followed it up with a certificate, or order of the probate court, granting probate of the will, along with the depositions of the witnesses taken in the probate court, proving the will in that tribunal. The objections of plaintiffs to admission of the certificate and the depositions were overruled.

The devising clauses of the will read as follows :

"*Second.* I give and bequeath to my two half-sisters, Ida Bridwell and Mattie Bridwell, the sum of twenty-five dollars each."

"*Third.* I give and bequeath to my aunt, Margaret H. Swank, wife of William P. Swank, the residue and remainder of my estate, both real and personal, of whatsoever kind in the states of Missouri and Kentucky, as a slight testimonial for the kindness of my aunt in her untiring care and attention to me during my sickness during the past six months. To have and to hold all and every the lands, tenements and hereditaments, with the appurtenances thereto belonging forever."

It seems that at this point the defendants rested their case, whereupon the plaintiffs declined to offer proof, relying upon the facts admitted in the answer as supporting a *prima facie* case of undue influence, and upon the declaration of the testatrix in her will as to the motive governing her in its execution. The defendants then, against the objection of plaintiffs, proceeded to introduce witnesses for the purpose of controverting any evidence of undue influence, and of repelling the legal presumption of undue influence flowing from the fiduciary relation admitted in the answer. J. H. Bethune, the attorney who drew the will and subscribed it as a witness, testified that the testatrix was of the same sound and disposing capacity as before her sickness, which had lasted about a year; that her mind was good and clear; that she was intelligent and tolerably well educated; that she was bright and considerably cultivated; that when he repaired to her, she told him that she wanted him to make her will, and that she had intended to do so for some time; that she dictated all that is in the will, except the bequest to the half-sisters which witness suggested, she fixing the amount, remarking that she had not contemplated giving them anything; that she had intended giving Mrs. Swank all she had; that Mrs.

Swank had been kind to her; that her sisters had not treated her right, and had not called on her; that they lived in town about one square distant; that Dr. Simpson was present when the will was made; that Mrs. Swank said in the presence of the testatrix that she had been for some time preventing her from making a will; that no suggestion was made to her but by witness as aforesaid.

Dr. Simpson's testimony corroborated Mr. Bethune's. He stated that the testatrix remarked that she wanted her aunt to have all her property; that she had been very good and kind to her, waiting on her during her entire sickness; that her sisters had not treated her right and she did not feel like leaving them any of her property; that while the testatrix had not been in good health since May, her mind was remarkably clear, as it always had been; that he had known her from childhood, being intimately acquainted with her, seeing her every few days, and attending her professionally in her last illness; that her opportunities for learning had been very good, having attended the normal school at Cape Girardeau; that witness had boarded in the family, and that nothing had occurred within his knowledge to indicate that she was influenced by the defendants or any one else; that she had been an inmate of Mr. Swank's family three or four years; that Mrs. Swank was in the house when the will was made, but not certainly in the room, possibly there; that Mr. Swank, at the time, was over in the swamp hunting, and had been gone for some two or three weeks; that witness was a brother-in-law of Mr. Swank.

Dr. Bondurant, who had been intimately acquainted with the testatrix for three or four years, and who was her physician for six months before her death, testified that he resided near Mr. Swank and was intimate in his family, and that he never, at any time, saw or heard anything done or said by Mrs. Swank, indicating a

desire to have the testatrix make a will, or to influence her in that behalf; that he never saw an act or heard a word indicating any undue influence over her.

Mrs. Margaret Swank, being produced and sworn, said: "I am one of the defendants in this suit; Kate Lee was my niece; she lived in my family nearly four years; during all that time, and while at my house, I never said anything to her to induce her to make a will; her father was my brother; her property came from her father; he left no children but her; I am the only living brother or sister of her father; her father's property came to him from his and my father; I at one time remonstrated against her making a will, and got her not to make it at that time; Mr. Swank, at the time the will was made, was absent from home on a camp hunt; was gone some five or six weeks."

Cross-examined by plaintiff: "My brother purchased this property; all of purchase price did not come from my father; Uncle Jimmie Smith told me he paid $400 on the farm owned by Lee; Uncle Jimmie Smith is the grandfather of Ida and Mattie Bridwell and Kate Lee; Ida Bridwell, I suppose from her looks, was about seventeen years old; Mattie two years younger; I knew Kate Lee's mother about twenty-five years and she was my sister-in law, and was the mother of Ida and Mattie; Kate Lee was nineteen years and six months old when she died."

Question by court: "She asked for a lawyer to be sent for and I told her to wait until her uncle came home; sometime after this she saw a little boy and sent for Mr. Bethune, and told him she wanted to make her will, and he wrote it; I never at any time said anything to induce her to make a will in my favor or otherwise."

Cross-examined by plaintiff: "I was told by several that she was going to make a will; one of them, Mrs. Goodin, is related to me; Kate never said anything to me about it; I know Miss Ella Swank; I don't re-

member that she ever told me Kate was going to make a will." Defendants then offered defendant, William P. Swank, as a witness, but he was objected to as an incompetent witness and excluded by the court, to which defendants objected and excepted.

At the close of the evidence the court gave at the instance of plaintiffs the following instructions:

"1. The court instructs the jury that if they are satisfied from the evidence that William P. Swank was guardian of Kate Lamar Lee, and remained her guardian up to the time of her death, and had never made a settlement of his guardianship, and that while he was her guardian she executed the paper exhibited to the jury as her will, and that she was influenced to make said will by the kindness, and in consideration of the kindness, of Margaret Swank, wife of William P. Swank, then the jury should find the issues for the plaintiffs."

"2. The court instructs you that if you believe from the evidence, that at the time of the making of the will in question, Kate Lamar Lee lived with the family of W. P. Swank and was treated by said Swank and his wife as one of the family; that she was sick for about one year before she died; that during said sickness she was treated by said Mrs. Swank with great kindness and affection; and that the said Kate Lamar Lee made the bequest in the will set out to the said Mrs. Swank "as a slight testimonial for the kindness and untiring care and attention" the said Mrs. Swank had given her during her last illness, and that the said Kate Lamar Lee at the time she made said will, expressed herself that she then bequeathed and devised her estate because she had not been visited by her sisters while she was sick, and had been badly treated by them about it; that these are facts tending to show an undue influence on the part of said Margaret Swank, and if you further believe from the evidence that the said alleged will was made in the house of said W. P. Swank, while the said Kate Lamar Lee

resided there, and before said William P. Swank had made his final settlement as her guardian, the presumption arising from such fact is that the alleged will was procured by undue influence."

"3. The court instructs the jury that if they shall find that Ida Bridwell and Mattie Bridwell are the half-sisters of Kate Lamar Lee, and that she left no other brothers, sisters, father and mother, then they are heirs at law, and if she executed a paper or will by which she disinherits them, or leaves them but a small portion of her estate, said fact would be a circumstance in determining the question of undue influence."

"4. The jury are instructed that the land or real estate referred to in the will is not in issue in this case, and in determining your verdict you will not take the real estate into consideration."

And the court gave the following instructions for defendants:

"1. Although the jury may believe from the evidence that at the time the will of Kate Lee was made, the relation of guardian and ward existed between her and defendant, William P. Swank, yet if they believe from the evidence that in the making of said will the said Kate Lee acted in a manner perfectly free, independent and unbiased, they should find for defendants."

"2. The court further instructs the jury that in order to find for the plaintiffs in this cause it must be shown by the evidence that undue influence on the part of the defendants, or either of them, over the mind of Kate Lee existed, and was exercised for an undue and disadvantageous purpose in the making of the will in controversy."

"3. If Kate Lee was eighteen years of age at the time of the making of the will in controversy, she had a perfect right to dispose of her personal estate by will, and unless the jury are satisfied from the evidence that said will was made under undue influence, exercised over her

by the defendants, or either of them, they should find for the defendants."

The verdict was for the defendants, and after an unsuccessful motion for a new trial, the case is brought here by the plaintiffs by appeal. In disposing of the appeal in this case I will consider only the points urged by plaintiffs for a reversal of the judgment.

I. The action of the court in giving the second instruction at the instance of defendants is assigned for error. The instruction reads as follows:

"The court further instructs the jury that in order to find for the plaintiffs in this cause it must be shown by the evidence that undue influence on the part of the defendants, or either of them, over the mind of Kate Lee existed, and was exercised for an undue and disadvantageous purpose in the making of the will in controversy."

To decide upon the character of this instruction it is only necessary to recall certain propositions of law which have been settled after thorough and repeated examinations. A devise by a ward to or for the benefit of his guardian, in any proceeding to establish or contest the same, is presumed in law to have been procured by the undue influence of the guardian, and the burden of repelling this presumption and thereby establishing or maintaining the devise rests upon those seeking to derive advantage from it. *Garvin's Adm'r v. Williams*, 44 Mo. 465; *Garvin's Adm'r v. Williams*, 50 Mo. 206. If the fiduciary relation of guardian and ward existed at the time of the execution of the gift or devise, and the parties were so situated with reference to each other that undue influence could have been used, the law presumes that it was used, and those seeking to derive advantage from it must rebut the presumption by competent and convincing proof. This presumption rests upon three facts for its formation: *First*, the fiduciary relation; *second*, the gift or devise to, or in the interest of the guardian; *third*, an opportunity for an exercise of undue

influence. Perhaps it would be accurate to say that the fiduciary relation *prima facie* implies an opportunity, and that proof of a want of opportunity is evidence properly in rebuttal of the presumption, which arises in the first instance from the first two facts, the first of which implies the third, but not by conclusive implication. This distinction is immaterial in the present case, as the answer admits that the ward resided with her guardian, thus furnishing ample opportunity for the exercise of undue influence upon her.

But it is insisted by defendants that the devise was not to the guardian, but to the guardian's wife, who was aunt of the testatrix, being sister of her deceased father. In determining the salutary presumption declared in the law of this state, the court must look to the substance, and natural or customary effects or uses of a devise, for the purpose of ascertaining whether it is for the interest or benefit of the guardian within the meaning of the presumption, which has been established to protect the ward from undue influence. Conceding that the devise in this case, by reason of the non-age of the testatrix, could not affect her real estate, the enabling act of 1877 not extending to unmarried minors, can it in any customary or practical sense be said that the guardian is without substantial benefit and advantage in a bequest of personal property to his wife? While such bequests, since the amendment of 1875, are protected to her separate use, it is also provided that it may vest in the husband without price or consideration by a mere reduction to his possession with the written assent of the wife. It is, also, expressly subjected to the debts of the husband contracted on account of necessaries for the wife or family. R. S. 1879, sec. 3296. In the absence of any reduction, it is apparent that the necessity of providing for the support and maintenance of the wife as well after as before his death, is diminished to the extent of any estate, either real or personal, acquired

by her from other persons. Instructed by the experience and ways of modern society I cannot fail to observe that, in popular estimation, the next best thing after a bequest to one's self, is a bequest to his wife. Indeed, in many instances, the latter may be regarded as the safer and preferable one.

I am satisfied that the guardian in this case may count on and derive such substantial advantage and benefit from the will of his ward, as to bring it within the operation of the rule imposing upon him and his wife the burden of repelling the presumption of undue influence. I think the evidence submitted by them was of that character, perhaps quite as much so as the nature of the case will admit of. Under proper instructions it was for the jury to decide whether it was sufficient to repel the disputed influence. The instruction complained of is assailed on the grounds that it fails to preserve the legal aspect of the issue on trial, and informs the jury that unless the undue influence is shown by the evidence in the case, the finding should be for defendants. It is argued that the facts admitted of record would justify a verdict for plaintiffs, and that the instruction, by confining the deliberations of the jury to the facts appearing in evidence, necessarily ignores the facts admitted of record. The instruction, taken by itself is, perhaps, open to the criticism that it does not distinguish the two classes of facts. It would perhaps have been better to have instructed the jury in apt language that the law presumed undue influence from the facts admitted in the answer, and that they should find for plaintiffs according to such presumption, unless they were satisfied from the evidence before them that such presumption was rebutted and overthrown, and that as a matter of fact the will was not procured by the undue influence of defendants, in which event their verdict should be for defendants. But the plaintiffs failed to ask an instruction thus

distinguishing the two classes of facts, and seem in their instructions to have treated them both as facts contained in the evidence before the jury.

It, also, appears that the facts admitted of record were, also, proved up before the jury in the testimony submitted by the parties. Besides, it appears that the legal import of the admitted facts is preserved in the second instruction, given at the instance of plaintiffs, and in the first one, given in behalf of defendants. Viewed in the light of these considerations I am persuaded that no material error resulted from the instruction. I think nothing more was intended in it than to announce the ultimate conclusion which the jury had to reach in order to find a verdict for the plaintiffs upon all the facts before them, whether proved before them or admitted of record. Before they could find a verdict for the plaintiffs they had to be satisfied from the facts which implied undue influence and the facts which repelled it, that the will was procured by such undue influence. This was the issue involved in the pleadings, and I do not think the instruction assumes to go beyond, or to ignore it. If there had been no evidence to repel the presumption of undue influence resting upon the facts admitted by the pleadings, the jury would nevertheless have been required to decide the issue by a verdict. In such case an instruction declaring the legal import of the admitted facts, would have been binding on the jury, and a verdict for defendants would have been set aside as erroneous. There being evidence in this case to repel the presumption of undue influence, the verdict for defendants indicates that the jury thought it sufficient to overthrow the presumption. It is thus responsive to the issue contained in the pleadings and evidence.

II. I perceive no material error in the court admitting the certified copy of the order of the probate court granting probate of the will. The fact of admission to probate is a necessary allegation in the proceeding to

contest the will. This fact was alleged on one side and admitted on the other. And as the order contained no extraneous recitals prejudicial to the plaintiffs, the most that can be said against it is that it was unnecessary and immaterial.

III. The admission of the depositions, taken down at the time the will was admitted to probate, cannot be so readily justified. The proof of a will in the probate court is only a provisional proceeding when considered in connection with the statutory action to contest the will. In this action the trial must be in the circuit court *de novo*, as if the issue was taken up by appeal. For all purposes of such trial, the proceedings in the probate court are superceded and vacated for the time being. *Lamb's Adm'r v. Helm's Adm'r*, 56 Mo. 432 ; *Benoist v. Murrin*, 48 Mo. 48. All persons interested in the issue are made parties to the suit, and the will must be proved up in solemn form, all parties having the privilege of examining and cross-examining witnesses. When viewed from this standpoint the proceedings in the probate court must be regarded as provisional and *ex parte*. The subscribing witnesses, whose depositions before the probate judge were given in evidence, were not cross-examined by the parties. The proceeding there contains no notice, and furnishes no opportunity for appearance or cross-examination. As depositions they are clearly incompetent evidence in the trial above and ought not to have been admitted. They are made competent by statute after decease of the witnesses. R. S. 1879, sec. 3983. But considering the issue as developed in the circuit court, I do not think the plaintiffs were prejudiced by the error complained of. The same witnesses, whose *ex parte* statements relating to the execution of the will were improperly admitted, appeared in the circuit court and repeated them there substantially as below, and full opportunity was given to plaintiffs to cross-examine The formal facts of execution and publication of the will, about

which the subscribing witnesses testified in the probate court, were not controverted above ; the issue there rather admitting the execution and publication, while charging that it had been effected through the undue influence of defendants.

IV. The objections of plaintiffs to some of the evidence admitted on behalf of defendants were properly overruled. The trial of the issue of undue influence must necessarily take a wide range of inquiry. Evidence relating to the intelligence, learning, accomplishments, associations and relationship of the testatrix, as well as to the amount and condition of her estate, and the source whence it was derived, is properly admissible to throw light upon her capacity to execute a will, and upon the motives controlling her in doing it. After considering all the objections urged against the judgment in this case, we fail to find any material error, calling for its reversal; accordingly it is affirmed. All concur, Henry, C. J., in the result.