FIRST NATIONAL BANK OF GLASCO, KANSAS, Respondent, v. COLUMBIA SECURITIES COM-PANY, Appellant.

Kansas City Court of Appeals, February 21, 1910.

1. **CONTRACTS: Statute of Frauds: Sufficient Memoranda.** Defendant being the owner of a promissory note for $1600 sold it to plaintiff for $1562.67, the condition of sale being that if at any time before maturity plaintiff wished to dispose of the note defendant would take it back and pay plaintiff $1600 therefor. This condition was evidenced by letters between the parties. Before the maturity of the note plaintiff tendered the note to defendant and demanded that it pay plaintiff $1600 therefor, which defendant refused to do. The letters between the parties sufficiently set forth the elements of their contract to make it valid under the Statute of Frauds, if the transaction is affected thereby.

2. **TENDER: Maker's Right in Property After Refused: Trustee.** Where plaintiff tendered defendant a note and the tender was improperly refused plaintiff thereupon became the holder thereof as an express trustee and it was its duty to exercise reasonable care to preserve the value of the note, and to take any proper steps to that end, and its conduct in so doing did not constitute a withdrawal of its tender.

3. **ACTION: Remedy: Measure of Damages.** Where defendant refused to accept a note and pay plaintiff $1600 as it agreed to do, plaintiff properly tendered the note and sued for the $1600 under the agreement.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn,* Judge.

AFFIRMED.

*Ellis, Cook & Barnett* for appellant.

(1) In the case of vendee's wrongful refusal to receive and pay for goods, the vendor cannot treat the property as his own, or exercise dominion over it and at the same time sue vendee for the purchase price. Campbell v. Woods, 122 Mo. App. 719; Lbr. Co. v. Lbr. Co., 51 Mo. App. 565; Vinegar & Spice Co. v. Wehrs, 59 Mo. App. 493; Walker v. Nixon, 65 Mo. App. 326; Range Co. v. Merc. Co., 120 Mo. App. 438; Mfg. Co. v. Gilpin, 120 Mo. App. 130; Am. and Eng. Ency. (2 Ed.), vol. 24, p. 1118. (2) A memorandum of a transaction within the Statute of Frauds must contain the entire essential elements of the contract, and cannot be pieced out by oral evidence. Weil v. Willard, 55 Mo. App. 376; Ringer v. Holtzclaw, 112 Mo. 519; Withnell v. Petzold, 104 Mo. 409; Boyd v. Paul, 125 Mo. 9; Carrick v. Mincke, 60 Mo. App. 140; Rucker v. Harrington, 52 Mo. App. 481; Milling Co. v. Burgher, 112 Mo. App. 14; Fine v. Hornsby, 2 Mo. App. 61; Bernhardt v. Walls, 29 Mo. App. 206; 29 Am. and Eng. Ency. (2 Ed.), pp. 959 and 960.

*Sebree, Conrad & Wendorff* and *Thad B. Landon* for respondent.

(1) Respondent was not the owner of the note and collateral, but held the same as a trustee for appellant, and this relation demanded that respondent exercise reasonable prudence and care with reference to the property. Range Co. v. Mercantile Co., 120 Mo. App. 447; Mechem on Sales, sec. 1674; Campbell v. Woods, 127 Mo. App. 719; Bank v. Kilpatrick, 204 Mo. 119; Brandt, Suretyship and Guaranty (1 Ed.), sec.

384; Bank v. Bartle, 114 Mo. 276; Colebrooke, Collateral Securities, sec. 87; Lewin, Law of Trusts, star page 294; Carpenter v. Carpenter, 12 R. I. 544; Taylor v. Benham, 5 How 233; Campbell v. Miller, 38 Ga. 304; Gould v. Chappell, 42 Md. 466; King v. Talbot, 50 Barb. 453; Banking Co. v. Miller, 190 Mo. 664; Ryan v. Ryan, 170 Mo. 286; Donaldson v. Allen, 182 Mo. 650; Schouler, Bailments, sec. 3; Van Zile, Bailments, sec. 12; sec. 12, Bankruptcy, Act; Loveland, Bankruptcy, p. 706, sec. 241; Loveland, Bankruptcy, p. 717; In re Arrington, 113 Fed. 498; Adler v. Jones, 109 Fed. 967; Collier, Bankruptcy, p. 145; Bankrupt Act, sec. 16. (2) The contract was wholly in writing. The court did not err in admitting evidence to the effect that the note and collateral which respondent bargained, sold and tendered to appellant, was the same property that respondent purchased of appellant.

BROADDUS, P. J.—This is an action on contract. In August, 1907, the plaintiff purchased from defendant, paying therefor $1,562.67, a certain promissory note dated July 20, 1907, and due November the 29th, next thereafter, executed by the Willow Grove Creamery Company by which it promised to pay for value received, to the Merchants Refrigerating Company the sum of $1,600, and endorsed by said Merchants Refrigerating Company and J. E. Brady. Attached to this note as collateral security was a negotiable warehouse receipt dated March 28, 1907, executed by said Merchants Refrigerating Company, by which the latter acknowledged that it had received from and agreed to deliver to the order of said Willow Grove Creamery Company four hundred cases of storage packed eggs marked and branded "W," which warehouse receipt was indorsed on the back by said Willow Grove Creamery Company, and was delivered to plaintiff by defendant with said note.

The purchase of the note was on condition that at

any time the plaintiff wished to dispose of it before maturity defendant would take it back.   It is necessary for the purposes of the case to refer to certain written correspondence between the plaintiff and defendant attending the purchase of said note.

On August 6, 1907, plaintiff wrote to defendant the following letter:

"We today received from you one note for $1600, endorsed by the Merchant's Refrigerating Company. In conversation with your Mr. Jones when we arranged with him to take this note and the condition was that the note was to be accompanied by a letter from the Columbia Securities Company stating that at any time we wished to dispose of the note before its maturity, they would take it back.   We will ask you to send us such letter and also ask you for the customary five days to investigate the offering.   We trust, however, that we will be able to satisfy ourselves very shortly and I make your remittance at once."

This letter does not appear to have been signed by plaintiff.

On the next day defendant wrote to plaintiff as follows:

"Yours of August 6th, received this p. m.   Our failure to write the letter promised by Mr. Jones was an error on our part, as the writer now remembers.   Such were his instructions over the long distance 'phone.

"At any time that you wish to cash this note before maturity, you may return to us with sight draft drawn on us for the face $1600.   If you know you are going to need the money, we would, of course, like to have you give us five or ten days notice of your intention to so to do.   We do not, of course, follow this custom with all paper, but we consider cold storage bonded warehouse paper the best on the market today and have no hesitancy, not only guaranteeing the paper at maturity, but in authorizing the purchaser to draw on us on sight for face, as we have in this instance."

On August 9, 1907, plaintiff sent by mail, to defendant, its draft for $1562.67, the agreed price for the note which was accompanied by a letter of which the following is an unsigned copy:

"We hand you herewith our draft for $1562.67, proceeds of your note made by Willow Grove Creamery Company for $1600, for four months, which you discounted to us at seven per cent rate a few days ago. We have your letter also offering to take up this note any time we may wish to use the money."

On November 14, 1907, plaintiff gave notice to defendant in writing that it would on the 23d day of that month draw a sight draft on it for $1600, to take up said note, and that plaintiff needed the money and wished to cash the note.

On November 23d, plaintiff presented said draft to defendant for payment, with the said note for $1600, and the warehouse receipt mentioned. Payment was refused.

Later on J. E. Brady, and the Merchants Refrigerating Company, were each duly adjudicated involuntary bankrupts. The plaintiff made proof and demand in bankruptcy in said proceedings upon said note and warehouse receipts. While said proceedings were pending a proposition for composition was offered by the bankrupts and accepted by a majority of creditors. The plaintiff however did not accept the offer of composition. The composition was duly confirmed. Under the terms of the composition a new company was formed called the Mid-Continent Refrigerating Company, the stocks and bonds of which the creditors accepted in amounts equal to their respective claims. The plaintiff accepted the said stock and bonds equal to the amount of said note.

The court received evidence to show that the note in controversy was the one mentioned in the letters transferring it to plaintiff.

The court sitting as a jury found for the plaintiff. Defendant appealed.

The defendant urges two main points of error. First, the memorandum of the sale of the note is within the statute of frauds as it does not contain the entire elements of the contract. If the basis of defendant's contention is correct there can be no question as to the law he relies on to support it. But we think he is mistaken in his premises that the writing lacks any essential element necessary to constitute a contract. It is true that the court admitted evidence to identify the note but the contract was complete in so far as to evidence a sale of the note to plaintiff, and the description was sufficiently accurate. And we are unable to see that the Statute of Frauds has any application.

The second point is that plaintiff after the tender of the note dealt with it as his own property. That his remedy was to set it aside as the property of defendant and sue for the purchase price, or to retain dominion over it with the right to act concerning it as to him seemed best, and sue defendant for breach of contract. Similar questions were before this court in Campbell v. Woods, 122 Mo. App. 719, where it was held that plaintiff's measure of damages was the contract price and not the difference between the market value and the contract price. The plaintiff here has pursued the remedy there pointed out.

The defendant having failed to accept the proffered compliance with the contract, the plaintiff had on his hands the note and the collateral security so tendered. What was he to do with them? If defendant's theory is right he should have sued for the purchase price, by which means he would have recovered what he paid for the note and interest at seven per cent, as the contract was made in Kansas where seven per cent is a lawful rate of interest. By so doing he would have lost the difference between the interest on the amount he paid for the note, and interest on the amount of the note itself,

141 App.—34

the effect of which would amount to a rescission of the contract. He was not required to do this. Nor was he required to sue defendant for a breach of the contract. He had the right to recover all his contract called for whether it be denominated one thing or another, as was determined *supra*.

The remaining question is what effect did his acts have after tender and refusal of defendant to comply with its contract, in going into a court of bankruptcy and presenting the note and warehouse receipt for allowance against the estate of the maker and indorser and receiving the bonds and stocks in the new corporation under the composition agreement of creditors for settlement of their claims against the bankrupt estates?

He was the holder of the note and collateral security, not under a claim of right in himself, but holding them under his tender to defendant. Had he failed to present them for allowance against the bankrupt estates of the maker and indorser they would have become valueless. Under the circumstances it was his duty to have taken such action as a prudent man would have taken in order to preserve the value of the property. Had he failed to do so, it would be a good defense to this action on a plea that the value of the property had been depreciated by his negligence in failing to have it allowed as a claim against the maker and indorser.

That he was a holder in trust we think there can be no doubt. It is said: "Where a person *sui juris* orally or in writing explicitly or impliedly declares that he holds personal property *in praesenti* for another he thereby constitutes himself an express trustee." [Perry on Trusts, vol. 1, sec. 86.] "A person is said to stand in a fiduciary relation to another when he has rights and powers which he is bound to exercise for the benefit of such other person." [Ryan v. Ryan, 174 Mo. 279.]

As the judgment was in accord with the law it is affirmed. All concur.